UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| HEATHER L.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00001-KMB-SEB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Heather L. applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on July 29, 2020, alleging an onset date of November 1, 2018. [Dkt. 9-7 at 2-7.] Her applications were initially denied on October 7, 2020, [dkt. 9-4 at 13, 23], and upon reconsideration on December 31, 2020, [dkt. 9-4 at 32, 37]. Administrative Law Judge Jeffrey Raeber (the "ALJ") conducted a hearing on May 20, 2021. [Dkt. 9-2 at 31.] The ALJ issued a decision on June 11, 2021, concluding that Heather was not entitled to receive disability insurance benefits or supplemental security income. [Dkt. 9-2 at 24.] The Appeals Council denied review on November 4, 2021. [Dkt. 9-2 at 2.] On January 5, 2022, Heather timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I.   STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and his conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotation marks and citation omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).[2] The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] . . . ; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*.  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work, and if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § § 404.1520(a)(4)(iv), (v); 416.920(a)(4)(iv), (v).  The burden of proof is on the claimant for Steps

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning disability insurance benefits and SSI, which are identical in most respects.  Cases may reference the section pertaining to disability insurance benefits, such as *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000), which cites 20 C.F.R. § 404.1520.  Generally, a verbatim section exists establishing the same legal point with both types of benefits.  The Court will take care to detail any substantive differences that are applicable to this case.

One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  BACKGROUND

Heather was 18 years old on November 1, 2018, the alleged disability onset date. [Dkt. 9-2 at 22.] She was homeschooled through the eleventh grade, and she completed some of the twelfth grade. [Dkts. 9-3 at 13, 9-8 at 4.] Heather has no past relevant work. [Dkt. 9-2 at 22.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Heather was not disabled. [Dkt. 9-2 at 24.] Specifically, the ALJ found as follows:

- At Step One, Heather had not engaged in substantial gainful activity[4] since November 1, 2018, the alleged onset date. [Dkt. 9-2 at 14.]

- At Step Two, Heather had the following severe impairments: schizophrenia, agoraphobia, anxiety disorder, and depressive disorder. [Dkt. 9-2 at 14.]

- At Step Three, Heather did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 9-2 at 62.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

- After Step Three but before Step Four, Heather had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid the use of moving machinery, commercial driving, and unprotected heights; she can perform simple, routine and repetitive tasks which can be performed at the SVP 1-2 level, in a work environment free of fast-paced production requirements, and which involve only routine workplace changes; she cannot have contact with the public, but she can interact occasionally with coworkers and supervisors; and any such contact must be superficial in nature, defined as no tasks which involve arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others." [Dkt. 9-2 at 16.]

- At Step Four, Heather had no past relevant work. [Dkt. 9-2 at 22.]

- At Step Five, relying on the VE's testimony and considering Heather's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision in representative occupations such as cleaner II, store laborer, and industrial cleaner. [Dkt. 9-2 at 23.]

### III.   DISCUSSION

Heather makes four assertions of error regarding the ALJ's decision: (1) the ALJ erred in evaluating functional limitations related to agoraphobia; (2) the ALJ erred by failing to explain how she could learn a job with only occasional and superficial contact with coworkers and supervisors; (3) the ALJ failed to account for moderate limitations in concentration, persistence, and pace in the RFC; and (4) the Appeals Council erred regarding medical opinion evidence submitted with Heather's request for review.  The Court will address the issues as necessary to resolve the appeal, beginning with the third issue that Heather raises, since the Court finds it to be dispositive on appeal.

**A. The ALJ failed to account for moderate limitations in concentration, persistence, and pace in the RFC.**

Heather claims that the ALJ erred in evaluating the RFC by failing to account for moderate limitations in concentration, persistence, and pace. [Dkt. 13 at 17.]  The VE testified that 10% of the workday spent off task would be considered work preclusive, but Heather says the ALJ did not address whether she could stay on task 90% of the time in a work environment. [Dkt. 13 at 18.]

5

She also argues that the ALJ's limitation to "fast paced production" is vague and not specific to the issue of whether she can keep pace in light of her moderate limitations in concentration, persistence, and pace. [Dkt. 13 at 18.]

In response, the Commissioner contends that Heather has not demonstrated she requires greater off-task and absenteeism limitations. [Dkt. 15 at 12.] Specifically, the Commissioner says that Heather does not cite any medical records showing that she would be off task more than 10% of the workday. [Dkt. 15 at 12.] The Commissioner argues it was not the ALJ's burden to address off-task behavior in the workplace absent any evidence supporting such a need. [Dkt. 15 at 12.] The Commissioner goes as far as to argue that remanding because the ALJ failed to show that Heather was able to stay on task for 90% of the workday would effectively reverse the burden of proof in every case where an ALJ does not specifically address time off task. [Dkt. 15 at 13.]

In reply, Heather asserts that she suffered from psychosis, delusions, agoraphobia, and panic attacks, and she attempted suicide in June 2020. [Dkt. 18 at 6.] Specifically, Heather notes her struggles with talking to a "being," hearing voices, and having delusions of people painted in the walls who laugh at her. [Dkt. 18 at 7.] Despite record evidence supporting such complaints, Heather says that the ALJ never discussed these delusions and how much they would interrupt her thoughts or force her to be off task. [Dkt. 18 at 7.]

An ALJ need not use any "magic words" when formulating a claimant's RFC. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). However, "the ALJ must explicitly account for all a claimant's limitations in [his] hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record." *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019). "[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's symptoms supported by the medical

6

record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The Seventh Circuit has routinely cautioned that "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020).

The Court agrees that the ALJ erred by not accounting for Heather's moderate limitations in concentration, persistence, and pace when assessing Heather's RFC. As an initial matter, there is no evidence—and the Commissioner does not argue—that the VE in this case reviewed Heather's medical history, heard testimony about the various medical limitations Heather argues were omitted from the RFC, or otherwise independently reviewed the medical record. Accordingly, the question for this Court is whether the RFC adequately accounted for Heather's moderate limitations. *See Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (finding no evidence the VE independently reviewed the record, so "we would expect an adequate hypothetical to include the limitations identified"). As mentioned, the ALJ expressly determined that Heather had moderate limitations in concentrating, persisting, and maintaining pace. [Dkt. 9-2 at 15.] He found that Heather's "symptoms of fear in certain situations are distracting to a moderate degree, and limit her ability to maintain concentration, persistence, and pace to a moderate degree when she is flustered or stressed." [Dkt. 9-2 at 15.] Despite these findings, the RFC included no corresponding restrictions or limitations. Rather, the RFC limited Heather to "simple, routine, and repetitive tasks … a work environment free of fast-paced production requirements, and which involve only routine workplace changes." [Dkt. 9-2 at 16.] The RFC further limited Heather to no contact with the

public, as well as occasional and superficial[5] contact with coworkers and supervisors. [Dkt. 9-2 at 16.]

Importantly, the ALJ's RFC formulation does not provide whether Heather can perform work at a sustained pace over an entire workday. The VE testified at the hearing that "if a person is off-task more than 10% of the workday, excluding the built-in breaks and lunches, that would be considered work preclusive." [Dkt. 9-2 at 52.] However, the ALJ did not decide whether Heather could meet this requirement. The ALJ limited Heather to no fast-paced production, but the Seventh Circuit has rejected "similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. BerryHill*, 916 F.3d 671, 675-76 (7th Cir. 2019); *see also Varga*, 794 F.3d at 815 (finding that it was "problematic that the ALJ failed to define 'fast paced production'" and that "without a definition, it would have been impossible for the VE to assess whether a person with [the claimant's] limitations could maintain the pace proposed"). Similarly, the Seventh Circuit has "repeatedly rejected the notion that a hypothetical … confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858-59. Limitations to simple, routine, and repetitive tasks are terms that refer to "unskilled work," which "the regulations define as work that can be learned by demonstration in less than 30 days," and "whether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments … can perform such work." *Varga*, 794 F.3d at 814.

---

[5] The ALJ defined superficial contact as "no tasks which involve arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others." [Dkt. 9-2 at 16.]

The Commissioner argues that Heather has not pointed to any medical records showing that she would need to be off task longer than 10% of the workday and that it was not the ALJ's burden to address this. It is generally true that a claimant must "establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). But the burden shifts to the Commissioner to determine whether the claimant could have performed jobs that existed in the national economy. *See Clifford*, 227 F.3d at 868. Here, the ALJ considered evidence that Heather had limitations in concentration, persistence, and pace, and the ALJ was clearly persuaded by that evidence, finding that Heather had moderate limitations. But by failing to account for such limitations in the RFC, the ALJ's decision was "internally inconsistent" and therefore failed to build a logical bridge between the evidence and the result. *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021).

Further, the ALJ relied on the opinions of state agency consultants, who also found that Heather had moderate limitations. [Dkt. 9-2 at 22.] One of these consultants—Dr. Maura Clark—found that Heather was moderately limited in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." [Dkt. 9-4 at 30.] When discussing Heather's limitations in concentration, persistence, and pace, the ALJ contrasted that "she has repeatedly indicated that she remains able to focus on video games, and that although she does not feel her artwork is very good, she maintains focus long enough to complete drawings." [Dkt. 9-2 at 15.] This reasoning does not build a logical bridge between the evidence and the conclusion; whether Heather is able to play video games or do art does not demonstrate that she can maintain pace or stay on task for an entire workday.

9

Beyond these comments regarding video games and artwork, the ALJ's decision focuses on treatment notes indicating a general trajectory of improvement in Heather's symptoms, but it is not clear how this discussion squares with the ALJ's findings of moderate limitations in concentration, persistence, and pace and his decision not to include any corresponding limitations in the RFC. The RFC is also difficult to square with the ALJ's discussion of Dr. Morey's findings—whom the ALJ quoted extensively and found somewhat persuasive—that Heather is "likely to be plagued by worry to the degree that her ability to concentrate and attend are significantly compromised" and "[h]er thought processes, although relatively uncompromised, may occasionally be marked by some confusion and difficulty concentrating." [Dkt. 9-11 at 89.] The ALJ acknowledged that Heather's "performance is likely to decline when she is confronted with stressful situations" and that "the effects of her impairments functionally reduce her to the performance of simpler tasks in a work setting." [Dkt. 9-2 at 22.] But again, limiting a person to simple work tasks does not adequately address limitations in concentration, persistence, and pace. *Varga*, 794 F.3d at 814. Accordingly, the Court finds that the ALJ committed reversible error, and this case must be remanded for further explanation or a new RFC assessment that accounts for all of Heather's mental limitations.[6]

---

[6] Though the Court finds that remand is warranted, it reminds Heather's counsel that undeveloped or underdeveloped arguments are at risk of being waived. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (citations and internal quotation marks omitted) (finding that "it is not this court's responsibility to research and construct the parties' arguments," and where "a party fails to develop the factual basis of a claim" and instead "merely draws and relies upon bare conclusions, the argument is deemed waived"). While the Court finds in Heather's favor on the issue detailed above, counsel's argument on this point was not as fully developed as the Court would prefer, such that counsel risks such an underdeveloped argument being found to be waived in the future.

### B. Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to address Heather's remaining arguments.

## IV. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the Commissioner's decision denying Heather benefits from the alleged onset date through the date of the ALJ's decision and **REMANDS** this case to the Social Security Administration. Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 3/27/2023

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email